UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
FOWLA AHMED A/K/A SHIPU AHMED,                                   :
                                                                 :  **MEMORANDUM**
                                         Plaintiff,              :  **DECISION AND ORDER**
                                                                 :
              - against -                                        :  12 Civ. 0524 (BMC)
                                                                 :
GATEWAY GROUP ONE, ED MCKAY,                                     :
JAMES SPRUIL, and J. WHITE,                                      :
                                                                 :
                                         Defendants.             :
                                                                 :
---------------------------------------------------------------- X

**COGAN**, District Judge.

This case is before me on defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

## BACKGROUND

Plaintiff Fowla Ahmed is a Bangladeshi woman who was employed by defendant Gateway Group One ("Gateway") as a taxi dispatcher at LaGuardia Airport from 2002 until 2006. Defendants Ed McKay, James Spruill, and J. White were plaintiff's supervisors.

In March, 2006, plaintiff had a verbal altercation with Spruill after plaintiff protested following one of Spruill's orders. Plaintiff alleges that Spruill was rude to her, screamed at her, called her names, and publicly ordered her to go home. After returning to work and discussing the incident with her union representative the next day, plaintiff was sent home by defendant McKay and was told that she would be contacted in a few days. She was subsequently terminated, via letter, for insubordination. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding this incident and received a right-to-sue letter on July 23, 2008.

In May of 2010, and again in May of 2011, plaintiff reapplied for her old job. According to plaintiff, she had done "excellent and outstanding work" as a taxi dispatcher. When she arrived at the office to reapply, however, defendant White screamed at her to leave. Although she filled out applications, plaintiff was never interviewed. Plaintiff filed a second charge with the EEOC on November 8, 2011, which stated as follows:

> I was first hired by [Gateway] on or about August 5[,] 2002. My most recent position was that of Taxi Dispatcher. I was terminated without cause. Given the above I believe I have been discriminated against based on my sex, color, and retaliation based on my complaints of the same in violation of Title VII of the Civil Rights Act as amended.

Recognizing that her termination is time-barred for the purpose of a discrimination lawsuit, plaintiff premises her claims solely on Gateway's failure to rehire her in May, 2011. In support of her allegations of racism and sexism, plaintiff notes that she is the only female from the Indian subcontinent who worked as a taxi dispatcher at LaGuardia. Although there are several male taxi dispatchers from the Indian subcontinent, there are no Indian or Bangladeshi women working as taxi dispatchers at LaGuardia.

On these facts, plaintiff alleges that defendants discriminated against her based on her race and sex. These claims are brought pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e). Plaintiff also brings a claim for intentional infliction of emotional distress under New York state law.

## DISCUSSION

As an initial matter, plaintiff gravely misapprehends the federal pleading standard. Plaintiff's brief in opposition to defendants' motion to dismiss describes, at length, the "no set of facts" standard laid out in the Supreme Court's decision in Conley v. Gibson, 355 U.S 41, 47, 78 S. Ct. 99 (1957). This standard is no longer good law. In Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555, 127 S. Ct. 1955 (2007), the Supreme Court held that a plaintiff's obligation to provide the grounds for her entitlement to relief requires "more than labels and conclusions, and the formulaic recitation of the elements of a cause of action will not do." The Court further held that, although factual allegations need not be especially detailed, "factual allegations must be enough to raise a right to relief above the speculative level." Id. Two years later, in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), the Court reaffirmed Twombly's interpretation of Rule 8, holding that "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." The Second Circuit has explicitly held that Conley's "no set of facts" language was "disavowed" by Twombly and Iqbal, and that the standard those cases espouse is the new pleading standard for all federal courts. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

**A. Discrimination Claims**

To state a discrimination claim under § 1981 or Title VII following Iqbal and Twombly, a plaintiff must allege facts to support the contention that the adverse employment action in question occurred as a result of the plaintiff's protected status. See Bermudez v. City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) (noting that § 1981 plaintiffs must plead more than "a recitation of a false syllogism: (1) I am (insert name of protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)"); Acosta v. City of New York, No. 11-CV-856, 2012 WL 1506954, at *12 (S.D.N.Y. Apr. 26, 2012) (quoting Bermudez in the context of Title VII). Like any other pleading, a discrimination complaint must indicate that the plaintiff has a right to relief. This requires a plaintiff to plead facts in support of the allegation that lies at the heart of any discrimination claim: that the plaintiff was treated differently on account of her protected status. Mere speculation about the reasons the plaintiff was treated differently is not adequate to "connect the

dots" between the adverse employment action and membership in a protected class. Acosta, 2012 WL 1506954 at *12-*13.

In the instant case, plaintiff's race and sex discrimination claims are premised on one fact: plaintiff was the only Bangladeshi woman working as a taxi dispatcher for Gateway.[1] This is insufficient to raise her discrimination claims "above the speculative level," as required by Twombly. Of course, the law does not require employers to hire a token employee from each ethnicity group present in the employer's community. Conceivably, if plaintiff had alleged hiring statistics which demonstrated a disturbingly low representation of one ethnicity as compared to the community, this might raise an inference that the employer had rejected applicants based on ethnicity. But this is not the case here. LaGuardia Airport is located in Queens; a borough described by the City of New York as "the most ethnically diverse urban area in the world." See THE NEW YORK EXPERIENCE: QUEENS, http://www.nyc.gov/html/ocnyc/html/experience/queens.shtml (last visited May 31, 2012). In a city as diverse as Queens, no meaning can be drawn from the fact that Gateway has hired only one Bangladeshi woman as a taxi dispatcher. Plaintiff's discrimination claims are therefore dismissed.

Even if plaintiff had adequately stated a claim, her Title VII discrimination claims would be dismissed for failing to exhaust her administrative remedies. The crux of plaintiff's claim is that Gateway refused to rehire her – or to interview her – on the basis of her race and sex. But plaintiff's EEOC charge only described plaintiff's termination and did not inform the EEOC that plaintiff reapplied for her old job, five years later, and was rejected. This Court has jurisdiction to hear Title VII claims only if they are included in an EEOC charge or based on conduct that is

---

[1] This Court accepts this allegation as true for the purpose of this motion. In general, on a Rule 12(b)(6) motion, this Court accepts the material facts alleged in the complaint as true and draws "all reasonable inferences in plaintiff's favor." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004).

4

"reasonably related" to the conduct alleged in the EEOC charge. Stewart v. U.S. Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985). From reading plaintiff's charge, the EEOC would have had no way to know that plaintiff reapplied to Gateway five years after she was terminated. The EEOC thus had no reason to investigate the circumstances of her reapplication, and this claim is accordingly unexhausted.

### B. Retaliation Claims

Plaintiff did not allege retaliation in her complaint. However, since defendants addressed retaliation in their motion to dismiss, plaintiff's opposition papers presume that retaliation has been alleged in the complaint. To the extent that plaintiff's opposition papers can be read as impliedly seeking leave to amend her complaint to add retaliation claims, leave is denied for the following reasons.

Plaintiff's opposition papers argue that Gateway rejected her job application in retaliation for plaintiff having filed her first EEOC charge. Although Title VII retaliation claims are often held to be "reasonably related" to discrimination claims for the purpose of EEOC exhaustion, see Butts v. NYC Dep't of Housing Preservation & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993), this principle does not provide any relief to plaintiff in this case. When plaintiff filed her second EEOC charge, the alleged retaliation had already occurred and there was no reason why plaintiff could not have raised this allegation with the EEOC. Moreover, since the second EEOC charge did not mention plaintiff's reapplication, the EEOC had no reason to speculate that Gateway would have had this opportunity to retaliate against plaintiff five years later. Since plaintiff failed to raise her Title VII retaliation claim with the EEOC, leave to amend her complaint to add this claim would be futile. See Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60

(2d Cir. 2012) ("[A] request to replead should be denied in the event that amendment would be futile.").

In her opposition papers, plaintiff also purports to bring her retaliation claims pursuant to § 1981. To state a retaliation claim under § 1981, however, a plaintiff must show: "(1) participation in a protected activity known to Defendants; (2) an adverse employment action; and (3) a causal connection between the two." Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 341 (S.D.N.Y.2009) (collecting cases). Even assuming that plaintiff amended her complaint to add a § 1981 retaliation claim and to explain that she filed a charge with the EEOC prior to re-applying at Gateway, plaintiff's opposition papers give no indication that she could adequately plead causation.

A plaintiff alleging retaliation must plead enough facts to plausibly suggest that there was a causal connection between her protected activity and the adverse employment action. Although "[c]lose temporal proximity between the plaintiff's protected activity and the ... adverse action may in itself be sufficient to establish the requisite causal connection," Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010), at least two years passed between plaintiff's first EEOC charge and the subsequent denial of her reapplication. Since there are no other facts in the complaint or in plaintiff's opposition papers that suggest a causal connection between the EEOC complaint and Gateway's failure to rehire plaintiff, it would be futile to allow plaintiff to amend her complaint to add a retaliation claim under § 1981 or Title VII.

### C. Intentional Infliction of Emotional Distress

In addition to her federal claims, plaintiff alleged a New York State Law claim for intentional infliction of emotional distress. Because the Court finds that the federal claims are meritless and dismisses them, it will not exercise supplemental jurisdiction over the state law

claims. In any event, the complaint fails to state a claim for intentional infliction of emotional distress. See, e.g., Semper v. N.Y. Methodist Hosp., 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [intentional infliction of emotional distress] because the conduct alleged is not sufficiently outrageous.").

## CONCLUSION

Defendants' [15] motion is granted and this case is dismissed. Leave to amend the complaint, to the extent it is being requested, is denied.

**SO ORDERED.**

s/ BMC
U.S.D.J.

Dated: Brooklyn, New York
May 31, 2012