UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
FOWLA AHMED A/K/A SHIPU AHMED,

                        Plaintiff,

          - against -

GATEWAY GROUP ONE, ED MCKAY,
JAMES SPRUIL, and J. WHITE,

                        Defendants.
-------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

12 Civ. 0524 (BMC)

**COGAN**, District Judge.

    This case is before me on defendants' motion for sanctions under Rule 11(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

    Plaintiff Fowla Ahmed is a Bangladeshi woman who was employed by defendant Gateway Group One as a taxi dispatcher at LaGuardia Airport. In 2006, she was terminated following a verbal altercation with her supervisor in which the supervisor allegedly screamed at her, called her names, and publicly ordered her to go home. In May of 2010, and again in May of 2011, plaintiff reapplied for her old job. When she arrived at the office to reapply, one of her former supervisors allegedly screamed at her to leave. On these facts, plaintiff alleged that defendants discriminated against her based on her race and sex. Plaintiff also brought a claim for intentional infliction of emotional distress ("IIED") under New York state law. In a Memorandum Decision and Order dated May 31, 2012, this Court granted defendants' motion to dismiss all of plaintiff's claims for failure to state a claim and other deficiencies.

Defendants moved separately for sanctions under Rule 11(b)(2) based solely on plaintiff's attorney having pursued her IIED claim, which defendants contend was blatantly meritless. Annexed to defendants' motion is the declaration of defendants' attorney, Diane Krebs, and annexed to that declaration is an e-mail correspondence between Ms. Krebs and plaintiff's attorney, Andrew Schatkin. In the e-mail, Ms. Krebs directed Mr. Schatkin's attention to caselaw demonstrating that plaintiff's IIED claim was meritless and asked Mr. Schatkin to withdraw the claim. Ms. Krebs informed Mr. Schatkin that she would seek Rule 11 sanctions if he did not withdraw the claim. Mr. Schatkin did not withdraw the claim, and defendants thus filed a motion to dismiss the claim. Defendants now move for sanctions against plaintiff "and/or" Mr. Schatkin under Rule 11(b)(2).

## DISCUSSION

Rule 11(c)(1) permits a court to sanction a party or an attorney who has violated Rule 11(b). Subsection (2) of Rule 11(b) states that, by presenting a pleading or motion to the court, "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). By its terms, Rule 11(b)(2) does not apply to a represented party; plaintiff thus cannot have violated this subsection of Rule 11. See Gurary v. Winehouse, 235 F.3d 792, 798 (2d Cir. 2000) ("[Sanctions] may not be awarded against a represented party for a violation of subdivision (b)(2) . . . because responsibility for such violations is more properly placed solely on the party's attorneys." (internal quotation marks omitted)). Accordingly, defendants' request for sanctions against plaintiff is denied.

As an attorney, however, Mr. Schatkin is obligated to comply with Rule 11(b)(2), and this Court finds that he has not. In determining whether an attorney has violated Rule 11, courts must determine whether the attorney's conduct meets "an objective standard of reasonableness." See Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995). This objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir. 1999) (quoting Fed. R. Civ. P. 11 Advisory Committee Note to 1993 amendments). An attorney may therefore be sanctioned under Rule 11(b)(2) if his legal argument clearly has "no chance of success," regardless of the attorney's conviction that his argument should prevail. Morley, 66 F.3d at 25.

As the cases cited by defendants make clear, there was no chance that this Court would deem the facts set forth in plaintiff's complaint sufficient to state a claim for IIED. The Second Circuit has quoted New York's highest Court in observing that the pleading standard for IIED claims is "'rigorous, and difficult to satisfy,'" since the offensive conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350 (1993)). District courts within this Circuit have thus repeatedly noted that the kind of interpersonal abuse that gives rise to a Title VII claim does not amount to an IIED claim unless the plaintiff was subjected to a special level of wickedness. See, e.g., Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a 'deliberate and malicious campaign of harassment or intimidation.'" (quoting Cohn-

Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 667 N.Y.S.2d 360, 362 (1998))); Stevens v. New York, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009) ("'Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous.'" (quoting Lydeatte v. Bronx Overall Econ. Dev. Corp., No. 00-CV-5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001))). Even when the alleged conduct is very cruel, New York courts are particularly wary of allowing plaintiffs to "recharacterize" their employment-related claims as IIED claims, since New York does not recognize a cause of action for wrongful termination. Gerzog v. London Fog Corp., 907 F. Supp. 590, 604 (E.D.N.Y. 1995).

Considering these cases, no reasonable attorney could determine that plaintiff's IIED claim was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," as required by Rule 11. Plaintiff's complaint alleges variously that her supervisor "became rude" to her; "was verbally abusive" to her; "screamed" at her; "called [her] names"; and sent her home unceremoniously. These allegations are precisely the type that other district courts have found to be insufficient to state a claim of IIED. See, e.g., Larson v. Essef Distribs., Inc., No. 09-CV-2133, 2009 WL 4067280, at *1 (E.D.N.Y. Nov. 19, 2009) (plaintiff's supervisor berated him; yelled at him; and called him names); Semper, 786 F. Supp. 2d at 574 (plaintiff's supervisor "criticized, harassed, intensely monitored, and highly scrutinized" her). Mr. Schatkin presents no argument for changing or extending the current law regarding IIED, and instead argues that plaintiff's claim "can be seen in many lights as valid," given the "flexible and evolving interpretation of what may constitute this tort." In support for Mr. Schatkin's inaccurate assertion that New York's interpretation of this tort is "flexible," he

cited to seven New York cases and one case from the Southern District of New York in which the plaintiff was permitted to pursue an IIED claim.

Although Mr. Schatkin does not describe or analyze any of the cases he cited, six of these cases involved conduct that occurred outside the employment context and that rose to a level of egregiousness that far exceeds the facts alleged here. See, e.g., Atherton v. 21 E. 92nd St. Corp., 149 A.D.2d 354, 539 N.Y.S.2d 933 (1st Dep't 1989) (plaintiff's landlord allowed pipes to freeze and burst and ceiling to collapse, causing plaintiff to live in the apartment for days without heat in the winter; a layer of oily soot to cover the interior of apartment; and lethal carbon monoxide fumes to physically injure plaintiff and her newborn child). The remaining two cases involved plaintiffs who were subjected to sexual battery in the workplace. See O'Reilly v. Executone of Albany, 121 A.D.2d 772, 773, 503 N.Y.S.2d 185 (3d Dep't 1986); Collins v. Willcox, Inc., 158 Misc. 2d 54, 600 N.Y.S.2d 884 (N.Y. Sup. Ct. 1992). Other district courts in this Circuit have noted this apparent exception for unwanted sexual touching in the workplace. See, e.g., Gerzog, 907 F. Supp. at 604 (citing O'Reilly and Collins and noting that "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery"). But there are no allegations of sexual misconduct in the instant complaint, and Mr. Schatkin does not argue that this narrow exception should be expanded to cover all instances in which a supervisor berates or insults an employee.

The 1993 Advisory Committee Note to Rule 11 sets forth certain factors that may be considered by a court when deciding whether to impose sanctions. Among other factors, this Committee Note directs a court to consider whether the conduct was "part of a pattern or

activity" and "whether the person has engaged in similar conduct in other litigation." Mr. Schatkin has repeatedly pressed IIED claims as part of employment discrimination cases, and has been informed by multiple courts that such claims are typically meritless in the employment context. In Larson, 2009 WL 4067280, at *4, Mr. Schatkin pursued an IIED claim on facts that are nearly identical to those alleged here – the plaintiff was berated, insulted, and rudely sent home from work – and the court dismissed the IIED claim on a Rule 12(b)(6) motion, stating that "[a]s a matter of law, the allegations in plaintiff's complaint cannot reasonably be regarded as so extreme and outrageous in nature as to permit recovery for intentional infliction of emotional distress." The court found these facts to be so incapable of stating a claim for IIED that leave to amend the complaint was denied as futile. Similarly, Mr. Schatkin pursued an IIED claim in Fahmy v. Duane Reade, Inc., No. 05-CV-9479, 2006 WL 2322672 (S.D.N.Y. Aug. 8, 2006), on behalf of a plaintiff who was loudly berated at work and terminated under humiliating conditions. The Fahmy court granted the defendant's motion to dismiss the IIED claim, explaining that "New York courts routinely dismiss claims for [IIED] in the employment context, except where such claims are accompanied by allegations of sex discrimination and, more significantly, battery," and warned Mr. Schatkin that his decision to pursue frivolous claims and file error-filled briefs potentially exposed him to Rule 11 sanctions. Id. at *5 n.7. Finally, in Hogan v. J.P. Morgan Chase Bank, No. 05-CV-5342, 2008 WL 4185875, at *3 (E.D.N.Y. Sept. 4, 2008), Mr. Schatkin pursued an IIED claim on behalf of a plaintiff whose supervisor had "screamed at her," criticized her for minor errors, and "frequently harassed her." The Hogan court held as a matter of law that these allegations failed to state a claim for IIED. Id. at 4.

In opposition to the instant motion, Mr. Schatkin attempts to distinguish these prior cases by claiming that all three cases "were determined on a motion for summary judgment brought by the defendants in those cases, after extensive discovery including interrogatories, document requests, and most important, depositions." This is untrue.[1] In all three cases, the court dismissed the IIED claim on a Rule 12(b)(6) motion to dismiss. There are only three possible explanations for Mr. Schatkin's glaring misrepresentation regarding his prior cases. First, Mr. Schatkin may have confused these cases with other cases, and did not pause to confirm his recollection before making detailed representations to the Court. Second, Mr. Schatkin may have made an intentional misrepresentation to the Court. Third, Mr. Schatkin may not understand the difference between a motion to dismiss and a motion for summary judgment.

Regardless of which scenario occurred, Mr. Schatkin's conduct is unacceptable and exemplifies his history of filing briefs laden with inaccuracies; ignoring controlling precedent; and disregarding the court's authority. See Harper v. City of New York, 424 F. App'x 36, 41 (2d Cir. 2011) (referring Mr. Schatkin to the Second Circuit's Grievance Panel and noting that he had "repeatedly failed to comply with the basic procedural requirements necessary to properly commence his client's case . . . [and] exhibited some serious misunderstandings of the law"); Ahmed v. Gateway Group One, No. 12-CV-524, 2012 WL 1980386, at *1 (E.D.N.Y. June 1, 2012) (noting that Mr. Schatkin's brief repeatedly cited bad law and stating that he "gravely misapprehends the federal pleading standard"); Supe v. Canon USA, No. 11-CV-3827, 2012 WL 1898936, at *1 (E.D.N.Y. May 24, 2012) (sanctioning Mr. Schatkin for his "repeated failure to

---

[1] Even if this were true, Mr. Schatkin's argument is illogical. According to Mr. Schatkin, the defendants are "apparently unaware that this is a motion to dismiss addressed to a pleading," and it is "questionable" that a sanction could issue at this stage in the litigation, since "all this litigant sought was for her case to be heard and this claim to be heard." But Rule 11 requires an attorney to determine whether a claim is "warranted by existing law" prior to filing a complaint. The facts surrounding plaintiff's alleged emotional distress are uniquely within her control – Mr. Schatkin even states in his opposition papers that "defendants are in the possession of no facts of the plaintiff's emotional state or suffering or of the trauma which may in fact have occurred" – and could have been alleged in the complaint. Discovery would not have changed a thing.

comply" with court orders); Harper v. City of New York, No. 09-CV-05571, 2010 WL 4788016, at *10 (E.D.N.Y. Nov. 17, 2010) (describing Mr. Schatkin's "troubling pattern of carelessness"); Edmee v. Coxsackie Corr. Facility, No. 09-CV-3940, 2009 WL 3318790, at *3 (E.D.N.Y. Oct. 14, 2009) (sanctioning Mr. Schatkin for filing a frivolous and unprofessionally prepared habeas petition and indicating the court's "conviction that counsel does not understand legal analysis or the use of authority"); Fowler v. Visiting Nurse Serv. of N.Y., No. 06-CV-4351, 2007 WL 3256129, at *7 (S.D.N.Y. Oct. 31, 2007) (sanctioning Mr. Schatkin for failing to obey the court's discovery schedule).

Mr. Schatkin's litigation history weighs in favor of Rule 11(b) sanctions, as it demonstrates his habit of disregarding well-settled law. In addition, his litigation history weighs in favor of a substantial monetary sanction. Having determined that Rule 11(b) has been violated, this Court has discretion to impose an amount of sanctions "'sufficient to deter repetition of such conduct.'" Margo v. Weiss, 213 F.3d 55, 64 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11(c)(2)). At a pre-motion conference held in the instant case, Mr. Schatkin represented to this Court that a threat of sanctions would not deter him in the least. Indeed, a review of Mr. Schatkin's disciplinary history shows that small monetary sanctions have not had the intended effect on Mr. Schatkin. See Fowler, 2007 WL 3256129, at *7 (sanctioning Mr. Schatkin $750 for failing to obey court orders); Supe, 2012 WL 1898936, at *1 (sanctioning Mr. Schatkin, four years after Fowler, for his "repeated failure" to obey court orders).

Defendants have requested their reasonable fees and costs incurred in defending against the IIED claim. This request is granted. Since Mr. Schatkin has not been deterred in the past by having to pay his opponent's attorneys' fees, this Court imposes an additional sanction in the amount of $1,000.00.

## CONCLUSION

Defendants' [18] motion is granted in part and denied in part. Within one week of the date of this Order, defendants shall submit an affidavit and contemporaneous time records demonstrating the reasonable fees and costs incurred in defending against plaintiff's IIED claim and seeking sanctions against Mr. Schatkin. Mr. Schatkin is sanctioned an additional $1,000.00, payable to the Clerk of the Court. Mr. Schatkin shall file proof of this payment within one month of the date of this Order.

**SO ORDERED.**

*S/ Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      June 7, 2012